IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

INTERNATIONAL BROTHERHOOD OF )
TEAMSTERS LOCAL UNION NO. 50, )
)
          Plaintiff, )
)
vs. )
)
KIENSTRA PRECAST, LLC, )
) CIVIL NO. 10-695-GPM
          Defendant/ )
          Third Party Plaintiff, )
)
vs. )
)
ILLINI CONCRETE, INC. )
)
          Third Party Defendant. )

# **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

      This matter comes before the Court on Third Party Defendant IlliniConcrete Inc.,'s ("Illini's") motion to compel arbitration (Doc. 18), and Defendant/Third Party Plaintiff Kienstra Precast, LLC's ("Kientra's") amended motion to compel arbitration (Doc.s 23, 24.)[1] For the reasons set forth below, both motions to compel arbitration are DENIED.

---

      [1] Kienstra unhelpfully gave two of its motions alternative titles: "Consent to Tripartite Motion and/or to Compel Tripartite Arbitration" (Doc. 23); and "Motion to Dismiss the Complaint by Kienstra Precast, LLC and Alternately its Reply in Support of Motion to Compel Tripartite Arbitration" (Doc. 26). Given that Kienstra filed an amendment to Doc. 23 and titled it an amended motion to compel, the Court construes Doc. 23 as Kienstra's motion to compel arbitration. Kienstra's reply to Plaintiff's response to the motion to compel–filed after its answer–is just that, a reply. That reply does raise an issue of subject matter jurisdiction, which will be addressed below.

Background

Plaintiff International Brotherhood of Teamsters Local Union No. 50 ("the Union") filed a complaint against Kienstra on Sept. 9, 2010 alleging Kienstra's status as an alter-ego and breach of contract (Doc. 2). The Union alleges that Kienstra is an alter-ego of Illini, which was party to a collective bargaining agreement ("CBA") with the Union (Doc. 18-1). That CBA between Illini and other employers with the Union was to be in-force from July 1, 2008 to June 30, 2011. The CBA governed, *inter alia,* pay rates and Illini pension contributions to Union workers. The CBA included a grievance section which mandated the following procedure: first, all grievances were to be presented to the Shop Steward; next, if there was not a satisfactory settlement at the Shop Steward stage, the grievance was to be referred to an executive officer of the company; then, if the grievance remained unsettled, "the parties by agreement shall submit the grievance to arbitration" (Doc. 18-1). The CBA defines a "grievance" as "any controversy, complaint, misunderstanding, or dispute arising as to meaning, application, or observance of any of the provisions of this Agreement."

Kienstra admits that it acquired assets of Illini in October 2009 when Illini ceased business activities, but has subsequently sold those assets (Doc. 6). The Union claims that Kienstra, as Illini's alter-ego, evaded unfunded pension liability. The Union seeks a judgment declaring Kienstra an alter-ego of Illini and declaring Kienstra bound by the Illini CBA. Upon leave from the Court, Kienstra filed a third party complaint against Illini on Dec. 17, 2010 (Doc. 14).

Illini's Motion to Compel Arbitration

Illini claims that because it had a CBA with the Union, the Union is bound to arbitrate this dispute. The arbitration provision in the Illini-Union CBA states that "any controversy, complaint, misunderstanding, or dispute arising as to meaning, application, or observance of any of the

provisions of this Agreement" shall be submitted to arbitration (Doc. 18-1 at 5). Illini argues that the Union's alter-ego claim (that the Illini CBA should apply to Kienstra) is a "dispute as to the meaning, application, or observance" of the CBA and is thus covered by the Illini-Union CBA arbitration provision. Illini claims that it can compel arbitration under this CBA because the Union's theory is that Kienstra is Illini's alter ego and therefore, if the Union "were correct, then Illini is responsible for any breach of the CBA" (Doc. 19). Kienstra filed a "notice" consenting to arbitration per Illini's motion (Doc. 23).

The Union responds that Illini, as third-party-defendant, lacks standing to compel the Union, plaintiff, to arbitrate, because Illini is only "party" to the third-party claim against it by Kienstra (Doc. 25). The Union alternately claims that this dispute would not be subject to the Illini-Union CBA arbitration provision. The Union claims that resolution of its action is a question of law, not a question as to the meaning or application of any of the CBA provisions–"The question before this Court is not whether or not Kienstra violated any one of the thirty-one (31) articles of the Agreement but rather whether or not they are legally bound by the Agreement" (Doc. 25 at 3).

Illini replies that Federal Rule of Civil Procedure Rule 14(a)(2) provides standing for its motion to compel arbitration. Citing, Rule 14(a)(2)(C), Illini argues that it "may assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim." So, Illini's argument is that it can move to compel arbitration pursuant to the Illini-Union CBA because Kienstra could move to compel arbitration pursuant to the Illini-Union CBA.

<u>Kienstra's Motion to Compel Tripartiate Arbitration</u>

Kienstra argues that because the Union ultimately seeks a declaration that the Illini-Union CBA applies to Kienstra, the Union should be estopped from simultaneously claiming the benefit

Page 3 of 9

of the CBA and avoiding the burdens of the CBA. Kienstra quotes the Seventh Circuit's decision in *Hughes Masonry Co v Greater Clark County Sch. Bldg. Corp.*: "It would be manifestly inequitable to permit [plaintiff] to both claim that [defendant] is liable...for its failure to perform...contractual duties under an agreement containing an arbitration clause and at the same time...[seek] to avoid arbitration of claims clearly within the ambit of the arbitration clause. In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." 659 F.2d 836, 838-39 (7th Cir. 1981).[2]

The Union argues in response (Doc. 25), that, unlike the plaintiff in *Hughes,* its complaint is not that Kienstra failed to perform contractual duties under the CBA. Instead, says the Union, its complaint merely seeks to establish the existence of an alter-ego status. The Union gets itself into some trouble here, and Kienstra picks up on the issue in the "motion to dismiss" part of its "motion to dismiss the complaint and alternately its reply in support of motion to compel tripartite arbitration" (Doc. 26). "Seeking to establish jurisdiction under § 301 [of the Labor Management Relations Act] alone...may...limit a party to arguing that they are bringing a suit for violation of a

---

[2] In *Hughes Masonry,* the Seventh Circuit vacated the district court's denial of defendant's motion to compel arbitration. A contract existed between Hughes Masonry and Clark Corp in which Hughes agreed to provide masonry services for a building project. Clark Corp had a preexisting contract with James Associates, wherein James Associates agreed to provide construction management for the building project and was authorized to assign project managers. James Associates consequently contracted with J.A. to perform construction management. After several disputes, Clark terminated its contract with Hughes. Hughes filed an action in the District Court of Southern Indiana against Hughes and J.A.. Clark and J.A. moved to compel arbitration. Hughes argued that it could not be required to arbitrate because J.A. was not entitled to invoke the arbitration provision of the Hughes-Clark contract, because J.A. was not a party to that contract. The Seventh Circuit found that Hughes was "equitably estopped from asserting [that argument] because the very basis of Hughes' claim against J.A. [was] that J.A. breached the duties and responsibilities assigned and ascribed to J.A. by the agreement between Clark and Hughes." 659 F.2d at 838.

collective bargaining agreement." *Teamsters National Automotive Transporters Industry Negotiating Committee v. M. Troha,* 328 F.3d 325, 328 (7th Cir. 2003). "[Section] 301 authorizes only suits for violations of contracts." *Texatron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW,* 523 U.S. 653, 660 (1998). The Union brought this action pursuant to section 301 of the LMRA. Therefore, to have subject matter jurisdiction, the Union must allege a contract violation. *See also Stevens Const. Corp. v. Chicago Regional Council of Carpenters,* 464 F.3d 682, 684-85 ("Section 301(a) of the Labor Management Relations Act of 1947 provides federal jurisdiction over 'suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.'") (quoting 29 U.S.C. § 185(a)).

Kienstra claims that the Union has 'admitted' it is not alleging a violation of the CBA and, thus, the Court no longer has subject matter jurisdiction. The Union says the breach of contract allegation is not the "backbone" of the complaint and that it is only seeking relief for the alter-ego allegation. The Union wants this Court to hold Kienstra to the CBA so that the Union can pursue its breach of contract claim against Kienstra pursuant to the CBA. The point of the Union's protestations against a contract claim in their response to Kienstra's motion to compel is to argue that no contractual obligation to arbitrate currently exists between the Union and Illini. The Union says that it does still maintain there was a contract violation. "The substance of the argument [in the Union's response to Kienstra's motion to compel] is not that there is not a violation of a collective bargaining agreement. The substance of the argument is that before any ruling on whether there has, or has not, been a violation there has to be a ruling on whether or not a party is bound by the agreement. Without a ruling on that issue, the remaining issues are not ripe" (Doc. 28 at 2).

Kienstra also argues that Illini does have standing to move to compel the Union to arbitrate,

citing Federal Rule of Civil Procedure 14(a)(2)(C), (D): "The [third party defendant] may assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim; and [the third party defendant] may also assert against the plaintiff any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." The Union responds that Kienstra, the third party plaintiff, *could not* assert a defense to the Union's claim on the basis of the Illini-Union CBA, because the very basis of Kienstra's defense is that it is not an alter-ego of Illini and is therefore not bound to the Illini-Union CBA.

Discussion

First taking up the issue of subject matter jurisdiction–the parties argue that the issue is whether the Union has constructively plead itself out of subject matter jurisdiction by contradicting the explicit claims in its Complaint with an argument in its response to the motion to compel. The Union's complaint explicitly states that it brings this action against Kienstra "alleging its status as an alter-ego *and for breach of contract*" (Doc. 2). The troublesome language in the Union's response to Kienstra's motion to compel arbitration reads: "The backbone of the Union's complaint is not that Kienstra violated the terms or conditions of the underlying Agreement....The only claim for relief sought by the Union is that this Court enter an order against Kienstra asserting it is an alter-ego, as well as an order that it be bound by the terms and conditions of the Agreement," and "As repeated throughout this memorandum, the Union *only* plead that Kienstra is an alter-ego."

However, it is the complaint itself that governs whether jurisdiction exists. "The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exits only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim."

*Caterpillar Inc., v. Williams,* 482 U.S. 386, 392 (1987). The Court looks to the face of a properly pleaded complaint to see if a federal question is present. *Tifft v. Commonwealth Edison Co.,* 366 F.3d 513, 516 (7th Cir. 2004). The Union properly pleaded subject matter jurisdiction in its complaint under section 301 of the Labor Management Relations Act. The Court does not lose subject matter jurisdiction upon the whim of the parties. Though the Union ostensibly contradicted its breach of contract claim in response to the motions to compel, it did allege breach of contract in its properly pleaded complaint. The Court therefore retains subject matter jurisdiction.

The next question is whether estoppel prevents the Union and/or Kienstra from alternately disavowing then championing the applicability of the CBA.[3] That is, can the Union claim that both: (a) Kienstra is the alter-ego of Illini and is thus bound to the provisions of the Illini-Union CBA, and (b) Kienstra cannot enforce the arbitration provision of the Illini-Union CBA against the Union now? Likewise, can Kienstra claim that both: (a) it is not an alter-ego of Illini; and (b) it is allowed to move for arbitration under the Illini-Union CBA? Kienstra moves to compel arbitration between itself and the Union on the basis of the Illini-Union CBA. However, Kienstra's defense is premised on the argument that Kienstra is not a party to that CBA because Kienstra is not the alter-ego of Illini. This muddles the applicability of Rule 14(2)(D) to Illini's motion to compel (is arbitration

---

[3] Arbitration is generally "a creature of contract." *Dunmire v. Schneider,* 481 F.3d 465, 467 (7th Cir. 2007). However, non-signatories to arbitration agreements can be bound to arbitrate under an estoppel theory. *See Thomson-CSF, S.A. v. American Arbitration Association,* 64 F.3d 773, 777 (7th Cir. 1995). In addition to estoppel, there are four other doctrines "through which a non-signatory can be bound by arbitration agreements entered into by others:" assumption, agency, veil piercing, and incorporation by reference. *Zurich American Insurance Company v. Watts Industries, Inc.,* 417 F.3d 682, 687 (7th Cir. 2005). These doctrines are not directly applicable here, as it is the non-signatory, Kienstra, seeking to compel arbitration between itself and the two signatories. *Zurich* is instructive, however, in that the district court initially decided the issue of whether certain parties were bound to arbitrate.

a defense to the Union's claim against Kienstra?).  Kienstra, meanwhile, relies on *Hughes Masonry* to argue that the Union "cannot have it both ways." *Hughes Masonry* 659 F.2d at 839.  In *Hughes Masonry,* only Hughes, the plaintiff, and Clark, one of the defendants, were signatories to the contract that Hughes sought to enforce against both Clark and J.A., the co-defendant.  However, the contract identified J.A. as the construction manager for the building project.  The Seventh Circuit noted that "the facts alleged constitute breaches of obligations spelled out in the Hughes-Clark agreement.  Ultimately, therefore, Hughes must rely on the terms of the Hughes-Clark agreement in its claims against J.A.  Hence, Hughes is estopped from repudiating the arbitration clause of this agreement, upon which it relies." *Id.* at 841.  J.A., though not signatory to the contract, was contemplated within the contract as a party involved in the construction.  A difference here, is that Kienstra is nowhere identified in the Illini-Union CBA because (the Union claims) Illini dissolved and reformed with "Kienstra" as its alter-ego in an effort to shirk responsibilities under the CBA.  Additionally, here the Union only seeks a declaratory judgment that Kienstra is an alter-ego and is bound to the Illini CBA.  The alter-ego issue distinguishes *Hughes Masonry*.

The crux of the motions to compel is whether the alter-ego question must be arbitrated. "Whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court on the basis of the contract entered into by the parties." *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 547 (1964).  The CBA provides for mandatory arbitration for all controversies, complaints, misunderstandings, and disputes arising as to meaning, application, or observance of any of the provisions of the CBA.  When we ask "Is Kienstra bound by the CBA?" and "Does the CBA apply to this dispute?," are we asking the same question?  If so, the action should be in arbitration.  The Court finds that these are distinct questions.  The alter-ego

issue need not be arbitrated.[4] The parties to the CBA cannot prospectively decide that a third party will be bound to the CBA. The CBA could have included language binding Illini-successors-in-interest to the CBA, but it did not.[5] The question of whether third parties might be bound to the CBA is not contemplated in the agreement, and the arbitration clause is thus not applicable. The Court can decide whether Kienstra is bound by the CBA without stepping into the bounds of the CBA's arbitration provision. The motions of Kienstra and Illini to compel arbitration are therefore DENIED.

**IT IS SO ORDERED.**

DATED: May 6, 2011

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge

---

[4] Analogously, though 29 U.S.C. § 1401(a)(1) of ERISA "specifies that any dispute between an employer and the plan sponsor of a multiemployer plan…shall be resolved through arbitration, the threshold question of whether a company is an 'employer' may be submitted to a court prior to arbitration." *Transpersonnel, Inc. v. Roadway Exp., Inc.,* 422 F.3d 456, 459 n. 1 (7th Cir. 2005). Determining the parties to the arbitration is not necessarily an arbitrable question.

[5] The Court notes that "[a]s a general matter…a corporate relationship alone is not sufficient to bind a nonsignatory to an arbitration agreement." *Thomson-CSF, S.A. v. American Arbitration Association,* 64 F.3d 773, 777 (7th Cir. 1995).